UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 14-mj-1024 (MJD)
_____

| | |
|---|---|
| United States of America, | |
| Plaintiff, | **DEFENDANT'S MEMORANDUM IN SUPPORT OF HIS MOTION IN OPPOSITION TO THE PLAINTIFF'S MOTION FOR REVIEW AND REVOCATION OF ORDER RELEASING DEFENDANT** |
| v. | |
| Abdullahi Yusuf, | |
| Defendant. | |

The above-named Defendant, by and through his attorney, Jean Brandl, respectfully moves this Court for an order denying Plaintiff's Motion for Review and Revocation of Order Releasing Defendant. This Memorandum is in response to the government's Memorandum of the United States in Support of Motion for Review and Revocation of Order Releasing Defendant on December 2, 2014 (hereinafter Government's December 2 Memorandum). In the interest of judicial economy, Defendant will try not to repeat the arguments set forth in his Memorandum and Motion to Uphold the Magistrate Judge's Order to Release Defendant (hereinafter "Defendant's December 2 Memorandum") filed on December 2, 2014. Defendant respectfully asks this Court to incorporate the previous memorandum by reference.

**ARGUMENT**

The government is struggling mightily to convince this Court that Mr. Yusuf is a flight risk and a danger to the community. Mr. Yusuf asks this Court to keep in mind that the government has no more evidence today than it had on May 28, 2014 when he was released into the community with his valid U.S. passport. The government's claim that

1

Mr. Yusuf must be detained falls flat in light of the fact that he has been out of custody for the past six months with no attempts to leave and no evidence that he has harmed anyone, threatened to harm anyone, or supported the actions of anyone who is harming people.   In June of 2014, Mr. Yusuf was aware of the seriousness of the potential charges against him and he did not attempt to flee.   Nothing has changed since May 28, 2014 when the government released Mr. Yusuf and as such he asks this Court not to detain him.

**Facts the Government Believes are Relevant to Detention**

Defendant's choice not to inform his parents of his whereabouts:

The government argues that because Mr. Yusuf's parents did not know he was going to Turkey nor how he obtained the money for the ticket, that Mr. Yusuf should not be released to live with them.   The government claims that parental supervision was "tried already, and has failed not once, but twice…"   (Government's December 2 Memorandum, page 6)   This is not true.   First of all, Mr. Yusuf was never under the "supervision" of his parents prior to November 26, 2014.   In May of 2014 he was an adult man living with his parents, but he was not under their "supervision."

Secondly, he did not "elude" his parents because they were not trying to catch him. Mr. Yusuf was an adult in May of 2014 and he had no obligation to report his actions or whereabouts to them.   If every defendant facing federal criminal charges were to be detained solely because they lied to their parents, the jails would be overflowing.   There are dozens of legitimate and lawful reasons Mr. Yusuf could have chosen not to tell his parents he was traveling to Turkey.

The government argues Mr. Yusuf's actions were a "well thought-out, multi-step

2

counter-surveillance plan." The government is stretching to make the situation appear as nefarious as possible. Mr. Yusuf had no reason to believe his parents were following him or that he had to somehow "elude" them. He was dropped off at school and then he left. That was the end of it. Again, Mr. Yusuf had no obligation to notify his parents of his whereabouts in May of this year. Mr. Yusuf's parents promised Magistrate Judge Mayeron they would supervise their son's release and Mr. Yusuf promised the court to follow the rules and to be responsible to his parents. On May 28, 2014 there were no such rules in place and Mr. Yusuf had no legal obligation to inform his parents of his whereabouts or activities. He does now and there is no evidence to support the government's contention that he will not follow the rules as set by the Court.

Value of Electronic Monitoring

The government argues electronic monitoring will not assure Mr. Yusuf's appearance in Court. Mr. Yusuf disagrees. If he were to leave the area or cut off the monitor, law enforcement would be notified immediately and there would be a widespread manhunt. His chances of escaping are slim to none. Moreover, if he were planning to escape, he would have done so in the six months before his arrest or in the past week. H

Surrender of passport

The government argues Mr. Yusuf can still escape the country without a passport. While this is certainly true, it is difficult. If Mr. Yusuf were inclined to leave the country, it would have made much more sense to do so when he was in possession of a valid United States Passport, which he had had in his possession for the six months prior to his arrest. Moreover, if he were inclined to leave the country, this would have been a good week to do it, knowing that the government was appealing his release and that as a result of

3

today's hearing he may be detained.

Again, the government is desperate to convince this Court to detain Mr. Yusuf. They continually fail to mention the fact that Mr. Yusuf was out of custody for six months with absolutely no conditions, during which time he made no attempt to leave. The government has no information now that they did not have on May 28, 2014 and yet they are claiming the same person they released on May 28, 2014 must now be detained despite the six months of model behavior by Mr. Yusuf. The government's position has no merit.

<u>Defendant's alleged statements to the FBI on May 28, 2014</u>

It is Mr. Yusuf's contention he did not lie to the FBI on May 28, 2014, and that he was not given a chance to explain his statements. He understands today's hearing is not about clarifying his statements, but he asks this Court to take into consideration that his statements were true or misunderstood. Should the Court take the FBI agent's claim at face value, it is important to keep in mind that the statements were made over six months ago, at which time the government released Mr. Yusuf into the community. If the government claims his "lies" on May 289, 2014 are the reason he must be detained, then it does not make sense that they released him six months ago.

**Rebuttable Presumption**

The government cites 18 U.S.C. section 3142(e)(3)(C) in support of its contention that there is a rebuttable presumption of detention in this case. (Government's December 2 Memorandum, page 2) Magistrate Judge Mayeron acknowledged that presumption and released Mr. Yusuf from custody because she found Mr. Yusuf's circumstances rebutted the presumption of detention. She ordered a combination of

conditions which she believed would reasonably assure the appearance of Mr. Yusuf in court.

The government argues Mr. Yusuf must be detained because there is no reasonable assurance he will appear in court, but his appearance in court this afternoon proves the merit of Magistrate Judge Mayeron's finding and disproves the government's very allegation that he cannot be assured to appear in court.

Moreover, as stated in the Defendant's December 2 Memorandum, Mr. Yusuf was out of custody with an active passport for a full six months prior to his arrest on November 25, 2014.  He was released on November 26, 2014 and has been out of custody for exactly a week without any problems.  The presumption of detention has been rebutted and his appearance in court weighs greater in support of release than detention.

The government lists the four factors for the presumption of detention pursuant to section 3142(g)(1), which are (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence; (2) the weight of the evidence; (3) the history and characteristics of the defendant; and ()4) the nature and seriousness of the danger to any person or the community.

Looking at the first factor, the government argues the nature and circumstances of the crime charged are a reason to detain Mr. Yusuf.  Interestingly, the government itself states, "the defendant is a part of a network that is only partially understood by law enforcement at this time."  (Government's December 2 Memorandum, page 9).  If the government does not understand the network it alleges Mr. Yusuf is a part of, how can there be an allegation he is part of something dangerous or violent?

Carrying this assertion one step further, it is important to note that ISIL was not

5

deemed a terrorist organization until May 15, 2014 (after Mr. Yusuf obtained a passport) and any atrocities by ISIL were not carried out until June of 2014. This Court must take into consideration that if Mr. Yusuf was leaving the country to work with ISIL (an assertion that has not been proven at this time) on May 28, 2014, he would have had no way of knowing its eventual violent tendencies and there would be little evidence to support a claim that he was heading to Turkey to assist that particular organization in carrying out violent acts.

Moreover, if Mr. Yusuf were intent on joining ISIL and was in support of the policies and actions of ISIL, there would be some sort of evidence showing his support for the organization. But there is none. There are no emails, phone calls, conversations or social media posts wherein Mr. Yusuf shows support in any way for terrorist activities or organizations. The FBI agent testified at the preliminary hearing that he is not aware of Mr. Yusuf having any contact with anyone involved in any terrorist groups or activities since May 28, 2014. If Mr. Yusuf supported these actions, ideals, or regimes, there would be some kind of evidence somewhere. The fact that none of this evidence exists, and the fact that the government still does not know the nature of ISIL rebuts the presumption that Mr. Yusuf is involved with violent acts.

The second factor sets forth that the Court must look at the "weight of the evidence" to determine whether or not to detain Mr. Yusuf. As stated above, the evidence in this case is weak at best. Mr. Yusuf was traveling to Turkey and he had a friend at the time who may have traveled on to Syria. Again, ISIL had been declared a terrorist group by the State Department for only 13 days at the time Mr. Yusuf was attempting to fly to Turkey. Even if he did plan to join ISIL (evidence of which does not

exist) there is no indication he knew it was a terrorist group at that time.  Moreover, ISIL had not committed any violent acts or atrocities on May 28, 2014 when Mr. Yusuf went to the airport.  If there was evidence now that he supported ISIL after the atrocities were committed, this would be a different situation, but there is no evidence Mr. Yusuf wanted anything to do with the types of activities ISIL has committed since June of 2014.

The government wants to gloss over the third factor of 3142(g)(1) regarding Mr. Yusuf's history and characteristics.  Mr. Yusuf is a young man with no criminal history who has been out of custody for six months while being aware of the seriousness of the potential charges against him.  He has made no attempt to leave the country and he has shown no interest in terrorist organizations or views.  He was not ordered to bring his passport to court on November 26, 2014, but he volunteered to have his family bring it to court for him to turn over to pretrial services to show his intent to remain in the United States.

Since May 28, 2014, Mr. Yusuf has led a quiet life.  He is enrolled as a college student and has a job at Best Buy.  This is not the behavior of a man planning to leave the country or planning to harm anyone, this is the behavior of a man planning to set down roots and stay in the country.

Finally, the fourth factor requires the Court to look at the danger to other persons or the community.  As stated in Defendant's December 2 Memorandum, he is not a danger to anyone.  If the government believed him to be a danger to anyone, why was he released in the community for the past six months?

## **CONCLUSION**

Abdullahi Yusuf is a quiet young man who is attending college, working at Best

Buy, and living with his family.   He has strong family and community support as evidenced by the dozens of people who came to his court hearing on November 26, 2014. Whether or not he intended to support ISIL in May of 2014 remains to be seen, but in light of the lack of violence by ISIL in May of 2014 and the government's admitted lack of full knowledge about the organization, it makes sense to release Mr. Yusuf to the community while the government decides how to proceed in this case.

Terrorism is a serious crime and it makes sense in many cases that people with strong ties to terrorist causes would be placed in custody pending trial.   This case is an exception for three reasons:   first, any link between Mr. Yusuf and ISIL is tenuous at best; second because at the time the government claims Mr. Yusuf wanted to support ISIL, in May of 2014, ISIL had only been declared a terrorist organization for 13 days and none of the atrocities had been performed; and third because all of the information presented to the court in the government's numerous motions was known to them on May 28, 2014 when Mr. Yusuf was released with his valid U.S. passport.

There is no indication in any of the documents presented by the prosecution that anything has changed or that there is any new or negative information gleaned about Mr. Yusuf since May 28, 2014.   If there was new information, this Court can rest assured the government would have presented it at the hearing on November 26.   In fact, the FBI agent testified that Mr. Yusuf has shown no sign whatsoever in terrorist groups, persons or ideologies since May 28, 2014.   The presumption that Mr. Yusuf must be detained has been rebutted many times over.

If this Court is inclined to detain Mr. Yusuf, he asks this Court to delay making a decision until after reading the entire transcript from the detention hearing and preliminary

8

hearing on November 26, 2014.   The FBI agent's testimony is quite elucidating as far as the lack of "danger" and lack of flight risk presented by Mr. Yusuf.

Abdullahi Yusuf respectfully requests this Court release him from custody under the same terms and conditions set forth by Magistrate Judge Mayeron.

                                      BRANDL LAW, LLC

Dated:  December 3, 2014          By: *s/Jean M. Brandl*
                                                 Jean M. Brandl (#0387260)
                                                 Attorney for Defendant
                                                 310 Fourth Ave. S., Suite 5010
                                                 Minneapolis, MN 55415
                                                 612-206-3773
                                                 Jean@BrandlLaw.com